IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DAVID ANDERSON, | No. 2:23-CV-0757-DAD-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SHASTA, et al., | |
| Defendants. | |

   Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if, as here, the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated

simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

The alleged violations occurred at Shasta County Jail in Redding, California.  ECF No. 1 at 1.  Plaintiff names the following as defendants: (1) the County of Shasta, California; (2) the Shasta County Sheriff's Office; (3) Tom Bosenko, former Shasta County Sheriff; (4) Eric Magrini, former Shasta County Sheriff; (5) David M. Kent, Captain; (6) Gene B. Randall, Jr., Captain; (7) Robert M. Van Gerwen, Correctional Deputy; (8) Zachary S. Jurkiewicz, Correctional Deputy; (9) William J. Decker, Correctional Deputy; (10) Joshua R. Millis, Correctional Deputy; (11) Debra K. Owen, Public Service Officer; (12) Stephanie Anne Bridgett, Shasta County District Attorney; (13) Curtis Woods, Shasta County Deputy District Attorney; (14) Eamon Fitzgerald, Deputy District Attorney; and (15) Daniel Dellwo, Physician's Assistant at the Jail's WellPath clinic. ECF No. 1 at 1-3.

Plaintiff claims violation of due process, retaliation, inhumane conditions of confinement, that he was threatened by officers, and violations of the Bane Act.  See id. at 7, 10, 12.

### Plaintiff's Fight

Plaintiff alleges that Correctional Deputy Decker lied about Plaintiff's involvement in a fight that occurred in Plaintiff's pod.  Id. at 7.  Plaintiff was in a fight with eight other white inmates, who each took turns striking another inmate.  See id. at 9.  Decker wrote in a report that Plaintiff used his cast (also referred to throughout the complaint as his splint) to strike an inmate and used his medical boot to kick the inmate.  Id.  Plaintiff admits he struck the inmate,

but he claims he acted to prevent the inmate from greater harm and did not use his splint to strike the inmate and did not kick the inmate at all.  See Id. at 7-8.

Correctional Deputy Jurkiewicz wrote a report saying that CCTV footage showed Plaintiff using his splint and medical boot to attack the inmate.  Id. at 8.  Plaintiff believes that the video proves his version of events.  Id.  Jurkiewicz reported to a doctor that Plaintiff had been fighting with his cast on.  Id. "Much later," Jurkiewicz smirked at Plaintiff and suggested that he wrote a bad report.  Id.

Plaintiff alleges that Decker and Jurkiewicz wrote false reports in retaliation for Plaintiff filing an excessive force complaint against Correctional Deputy Van Gerwen.  Id. at 9.

Plaintiff pleaded guilty to Assault with Force Likely to Produce GBI for the fight in the pod.  Id.  Plaintiff believes he was offered a plea deal for a lesser charge because the video did not substantiate that he used his cast or medical boot.  Id.  Plaintiff argues that Shasta County District Attorney Bridgett and Deputy District Attorneys Woods and Fitzgerald acted with reckless disregard for the truth.  Id. at 8.

Decker's and Jurkiewicz's reports led to Plaintiff being denied Prop 57 early release.  Id. at 9.

Plaintiff alleges that Decker and Jurkiewicz were acting pursuant to the customs, policies, practices, and procedures of the following defendants: (1) Shasta County, Shasta County Sheriff's Office; (2) Bosenko former Shasta County Sheriff; (3) Magrini, former Shasta County Sheriff; (4) Kent, Captain at Shasta County Jail; and (5) Randall, Captain at Shasta County Jail. Id. at 9.  Plaintiff believes the defendants allowed for the correctional officers' actions.  Id.

Plaintiff's Solitary Confinement

Because of Plaintiff's fight, he was put into "the hole" for sixty days.  Id. at 10. "The hole" was a cell with walls covered in feces and urine.  Id.  Plaintiff asked to be moved to another cell or to at least be given cleaning gear.  Id.  Correctional Deputy Millis denied Plaintiff's request but noted how gross the cell was.  Id.  Millis had previously refused Plaintiff's request to follow up on a new cast.  Id. at 11.

/ / /

3

During Plaintiff's stay in "the hole," Plaintiff's mother sent him hygiene products. Id. Public Service Officer Owen initially claimed there were no orders for Plaintiff. Id. Only once Plaintiff was out of disciplinary did Owen find the order. Id. Plaintiff believes his order was intentionally lost in retaliation for his report against Correctional Deputy Van Gerwen. Id.

Plaintiff developed numerous recurring abscesses from his stay in "the hole." Id. at 11. He had to go to the emergency room for treatment, and the abscesses prevented him from serving time in a fire camp. Id.

Plaintiff alleges that Millis and Owen were acting pursuant to the customs, policies, practices, and procedures of the following defendants: (1) Shasta County, Shasta County Sheriff's Office; (2) Bosenko former Shasta County Sheriff; (3) Magrini, former Shasta County Sheriff; (4) Kent, Captain at Shasta County Jail; and (5) Randall, Captain at Shasta County Jail. Id. at 11. Plaintiff believes the defendants allowed for the correctional officers' actions. Id.

### Plaintiff's "Elevator Ride"

Plaintiff believes Correction Deputy Van Gerwen has a personal vendetta against him. Id. at 12. Plaintiff filed an excessive force report against Van Gerwen in 2019. Id. Following the report, Van Gerwen and six officers went on an "elevator ride" with Plaintiff and told him, "You better not submit another fucking grievance or ADA form, or else!" Id. Plaintiff alleges that correctional officers follow a pervasive practice of severely beating inmates on these "elevator rides." Id.

### COVID-19

During Plaintiff's incarceration, he caught COVID-19. Id. at 28. COVID-19 delayed Plaintiff's transport to prison, and it affected Plaintiff's ability to participate in the Alternative Custody Program. Id. Plaintiff alleges PA Dellow denied Plaintiff treatment despite requesting to see a doctor for his symptoms. Id. at 30. Plaintiff received only Ibuprofen and was denied electrolytes and cough drops. Id.

///

///

///

## II.  DISCUSSION

Plaintiff sufficiently pleads a retaliation claim because he alleges that he suffered adverse action for engaging in protected conduct.  Plaintiff's due process claim fails because he does not plead that procedural safeguards were insufficient but instead simply that he does not agree with the evidence or result of his hearing.  Plaintiff pleads a sufficient conditions-of-confinement claim for the allegedly vile conditions of his cell. The threat claim is insufficient because it does not allege facts more severe than mere verbal abuse.  Plaintiff's claim alleging inadequate medical treatment is insufficient because he does not plead that PA Dellwo acted with malicious intent.  Plaintiff's claims against the District Attorney and Deputy District Attorneys are too vague and conclusory, as they are not connected to a theory of relief. Plaintiff's Bane Act Claims are not cognizable because Plaintiff does not plead compliance with the Government Claims act.  Plaintiff will be granted leave to amend his claims.

### A.  Retaliation Claim

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000); see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes, 408 F.3d at 568.

///

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff alleges that correctional deputies lying about Plaintiff's actions and the events that followed were spurred in retaliation for Plaintiff's filing of an excessive force complaint against Correctional Deputy Van Gerwen.  See id. at 9.  Filing a complaint is a protected activity and Plaintiff's discipline constituted adverse conduct, so Plaintiff sufficiently alleges a retaliation claim.  See Rhodes, 408 F.3d at 568.

### B. Due Process Claim

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd. of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits.  See id.

///

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-

deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Plaintiff claims he was deprived due process because correctional officers lied about how he participated in a fight. See ECF No. 1 at 7. Corrections Officers Decker wrote a report detailing that Plaintiff used his cast and medical boot as weapons. Id. Jurkiewicz reviewed video footage of the incident and wrote a similar report. Id. at 8. Due process requires that Plaintiff be given sufficient procedural safeguards before being disciplined. See Wolff, 418 U.S. at 563-70. Plaintiff does not allege that he was denied the opportunity to present evidence or call witnesses, and so he does not present a due process claim. See id.

///

## C. Conditions-of-Confinement Claim

"The Constitution 'does not mandate comfortable prisons.'" Farmer, 511 U.S. at 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint, 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

Forcing an inmate to house in a cell covered in feces for an extended period of time constitutes unconstitutional conditions of confinement. Taylor v. Riojas, 141 S. Ct. 52, 54 (2020). Plaintiff made Correctional Officer Millis aware that the cell was covered in feces ECF No. 1 at 10. Millis acknowledged the cell's condition forced Plaintiff to house in the cell

regardless. Id. Plaintiff's conditions of confinement claim is cognizable.

### D. Threat Claim

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Physical sexual assault by a prison official on an inmate is deeply offensive to human dignity, lacks any legitimate penological objective, and therefore violates the Eighth Amendment. Schwenk, 204 F.3d at 1196-97; Farmer v. Brennan, 511 U.S. 825, 834 (1994) (such sexual abuse is "simply not part of the penalty that criminal offenders pay for their offenses against society").

That said, inmate sexual harassment claims, which allege sexually inappropriate touching and/or sexually inappropriate comments, require a careful assessment of the unique circumstances of each case. Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search. "Even if plaintiff believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted by 2010 WL 2572570 (C.D. Cal. 2010); aff'd, 452 F.

App'x 768 (9th Cir. 2011).  And even outside the context of a search, if a defendant is alleged to have grabbed a plaintiff's buttocks for a few seconds, the claim does not give rise to an Eighth Amendment violation.  See Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998).  For a sexual harassment claim to be cognizable, Plaintiff must allege an "objectively serious injury (either physical or psychological.)"  Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir. 2012) (quoting Berryhill, 137 F.3d at 1076).

In Watison, the Ninth Circuit affirmed the dismissal of an inmate's Eighth Amendment sexual harassment claim against a correctional officer who allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed his thigh against plaintiff's thigh and "began smiling in a sexual contact [sic]," then left plaintiff's cell laughing.  668 F.3d at 1112-14.  The Ninth Circuit ruled that "[t]he 'humiliation' Watison allegedly suffered from the incident with Officer LaGier does not rise to the level of severe psychological pain required to state an Eighth Amendment claim."  Id. at 1113.  Moreover, the Ninth Circuit found that "Officer LaGier's alleged wrongdoing was not objectively harmful enough to establish a constitutional violation . . . ."  Id. at 1114 (citations and internal quotation marks omitted).

While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the [C]onstitution."  Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000).  Likewise, allegations of verbal harassment generally do not state a claim under the Eighth Amendment.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, "[v]erbal harassment may violate the Constitution when it is 'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage.'"  Cox v. Kernan, 2019 WL 6840136, *5 (E.D. Cal. Dec. 16, 2019) (quoting Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)).

/ / /

/ / /

11

Allegations of name-calling, verbal abuse, or threats generally are also not unusually gross for a prison setting. See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021). Thus, a defendant's threats to kill or harm a plaintiff are insufficient, without more, to give rise to a cognizable verbal harassment claim. See Bailey v. Soto, 2019 WL 4452970, at *7-9 (C.D. Cal. July 10, 2019).

It is well established that "[a] threat of deadly force made merely to inflict gratuitous fear and punishment when the party has both the opportunity to carry out the threat and evidences the intent to do so does state a cognizable claim under the Eighth Amendment." Oliver v. Noll, 2012 WL 2055033, at *2 (N.D. Cal. June 5, 2012) (citing Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992) (pointing gun at inmate's head and threatening to shoot amounts to cognizable Eighth Amendment claim; and Burton v. Livingston, 791 F.2d 97, 100 (8th Cir. 1986) (drawing gun and terrorizing prisoner with threats of death while using racially offensive language states first amendment, due process and equal protection claims)). Further, where there is a threat of non-deadly force where, for example, a defendant aims a weapon at a plaintiff "for the malicious purpose of inflicting gratuitous fear", there is a cognizable Eighth Amendment claim. See Parker v. Asher, 701 F. Supp. 192, 195 (D. Nev. 1988) (holding that "guards cannot aim their taser guns at inmate for the malicious purpose of inflicting gratuitous fear. Allegations of such sadistic conduct state a cognizable claim of cruel and unusual punishment.").

Where cases are concerned with "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" Carpenter, 2021 WL 2226635, at *3 (quoting Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)) (quoting Oltarzewski, 830 F.2d at 139) (alterations omitted), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

The court in Zavala applied this standard. Zavala v. Barnik, 545 F. Supp. 2d 1051 (C.D. Cal. 2008). There, a guard allegedly screamed profanities at an inmate "in regard to Plaintiff's ethnic/racial background," and, while denying the inmate a roll of toilet paper,

stated that "it's because of you people that the State is in a budget crisis, you'll have to use the restroom and wipe your ass with your finger!" Id. at 1054. The court held that the "alleged comments about Plaintiff's racial, ethnic, or alienage background did not state a claim." Id. at 1059.

Plaintiff alleges that he was verbally threatened during an "elevator ride" to not file any grievances or ADA forms. ECF No. 1 at 12. Plaintiff does not allege the corrections officers physically abused him during the "elevator ride," but he claims that they have physically abused other prisoners in the past. Id. Because verbal harassment alone is insufficient, Plaintiff does not state a cognizable claim for the threat. See Carpenter, 2021 WL 2226635, at *3.

### E. Medical Needs Claim

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that he was not given anything more than Ibuprofen for his COVID-19. ECF No. 1 at 30. Plaintiff does not allege that PA Dellwo acted with malicious intent. See id. Mere negligence is insufficient to sustain an Eight Amendment claim. See Estelle, 429 U.S. at 106. Plaintiff also does not allege that his lack of treatment led to further injury. See ECF No. 1 at 30. Because Plaintiff does not allege PA Dellow acted with the purpose of inflicting harm, he does not present a cognizable medical needs claim. See Farmer, 511 U.S. at 834.

### F. Vague and Conclusory Claims

The Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

Plaintiff alleges that County District Attorney Bridgett and Deputy District Attorneys Woods and Fitzgerald acted with reckless disregard for the truth in pursuing his prosecution for the pod fight. ECF No. 1 at 8. But Plaintiff must connect the claim with a constitutional violation; he must explain how, if his allegations are true, he is entitled to relief for violation of a constitutional right. See Fed. R. Civ. P. 8(a)(2).

### G. Bane Act Claims

Plaintiff has failed to state claims based on state law because Plaintiff has not alleged compliance with the Government Claims Act, which required to plead such claims. See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for claims against the State, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); see also Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").

Plaintiff asserts a violation of California law, but plaintiff fails to plead compliance with the California Tort Claims Act. Plaintiff is informed that before he may proceed on a claim arising under California law in this court he must comply with the terms of the California Tort Claims Act, and then plead compliance. See Cal. Gov't Code § 910 et seq.; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995). Complaints must present facts demonstrating compliance, rather than simply conclusions suggesting as much. Shirk v. Vista Unified School Dist., 42 Cal.4th 201, 209 (2007).

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An

amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  September 1, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE