IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DAVID ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SHASTA, et al.,<br><br>Defendants. | No. 2:23-CV-0757-DAD-DMC-P<br><br>ORDER |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's first amended complaint, ECF No. 12.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if, as here, the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff's first amended complaint lists eleven claims against various defendants.[1] See ECF No. 12.

Plaintiff's first claim is a violation of the Fourteenth Amendment Due Process Clause. See id. at 10. According to Plaintiff, Defendant "Decker's incident report contained fabricated statements that were repeatedly used against me, in print and word – even to the point of my being legally charged for crimes misrepresented by his words." Id. at 11. Plaintiff asserts that Defendant Decker "recklessly or deliberately included false information in the affidavit used to obtain [a] warrant" against Plaintiff. Id. at 10. Plaintiff contends that this warrant, which relied on Defendant Decker's false report, resulted in Plaintiff

> serv[ing] more time behind bars, miss[ing] the opportunity to be released on an ankle monitor to an outside long-term inpatient treatment center . . . [and] inaccurate police/prison records of violent acts, with weapons, that I did not do.
>
> Id.

///

---

[1] Plaintiff has another pending action, Anderson v. Vangerwen et. al., E. Dist. Cal. case no. 2:20-cv-00246-DC-SCR (herein Anderson 1), which is referenced in the amended complaint in this action.

2

1          Plaintiff asserts that "it's because of Decker's false information being sent to the
2  Prop 57 parole board that I was denied an early release – thus being wrongfully imprisoned for
3  crimes I didn't commit." Id. at 11.

4          Plaintiff's second claim alleges that his Fourth Amendment rights were violated by
5  Defendants Bridgett, Woods, and Fitzgerald because Defendant Decker's "false allegations" were
6  used as the basis of an arrest warrant. Id. at 14-15. Plaintiff states Defendants Bridgett, Woods,
7  and Fitzgerald "had the duty to proceed with due diligence, before accusing a person with
8  crimes." Id. at 15. Plaintiff contends that Defendants instead "acted with a reckless disregard for
9  the truth." Id. According to Plaintiff, the fabrications in Defendant Decker's report were
10 inconsistent with the video recording of the incident and "when videos are available, they should
11 be reviewed prior to making accusations." Id. at 16. Further, Plaintiff asserts that "when the
12 deputy DA saw the video, it was his duty to notify his boss, the DA, of the lies in Decker's
13 fabricated report." Id. at 15. Additionally, Plaintiff asserts that "even after the final charge was
14 shown to not line up with the Decker's fabricated incident report," the District Attorney's office
15 sent a letter "opposing [Plaintiff's] release" that contained "the blatant lies . . . [from] Decker's
16 fabricated incident report." Id. at 17.

17         Plaintiff next asserts an Eighth Amendment claim, for "denying humane
18 conditions of confinement," against Defendant Millis. Id. at 18-19. According to Plaintiff, on
19 March 7, 2019, he was placed in a cell with "urine and feces cover[ing] the walls" and when
20 Plaintiff asked Defendant Millis for something to clean the walls, Defendant Millis "looked in
21 and said, 'Gross. That sucks.'" Id. at 18. Plaintiff asserts that these conditions resulted in
22 "gastrointestinal issues . . . [and] . . . recurring abscesses . . . one of which developed into
23 cellulitis and lymphangitis." Id.

24         Additionally, Plaintiff contends that Defendant Owen withheld hygiene products
25 from Plaintiff despite the products being permitted, in retaliation for Plaintiff's "grievances
26 insisting Van Gerwen be investigated for using excessive force." Id. at 19.
27 / / /
28 / / /

3

1              In Claim 4, Plaintiff asserts that Defendant Decker and Jurkiewicz violated

2  Plaintiff's First Amendment rights by filing false reports against Plaintiff in retaliation for the

3  grievance Plaintiff filed. Id. at 20; 23. Plaintiff states that this claim was severed from Anderson

4  1. Id. at 20-21. The claim against Defendant Decker is based on the same facts as alleged in

5  Plaintiff's first and second claims. Id. at 20-22. Plaintiff includes additional facts that Defendant

6  Jurkiewicz falsified information about the same incident, improperly representing to medical staff

7  that Plaintiff was fighting. Id. at 22.

8              Plaintiff next alleges municipal liability against Defendant Shasta County in Claim

9  5, asserting that the County is responsible for denying inmates' constitutional rights. Id. at 24.

10  Plaintiff believes that

11  
> the County, SCSO [Shasta County Sheriff's Office], Bosenko, Magrini,
> Randall and Kent knew that defendants Van Gerwen, Juriewicz, Decker,
12  > and Millis had the propensities and character traits to perpetuate the
> actions outlined in this complaint.
13  

14  Id. at 26.

15              Next, Plaintiff alleges a supervisory liability claim against Defendants Bosenko,

16  Magrini, Kent, Randall, Bridgett, Woods, Fitzgerald, Van Gerwen, Decker, Juriewicz, Millis and

17  Owen as Claim 6. Id. at 28. Plaintiff states that "this claim applies to all of the relevant claims in

18  this document." Id. Plaintiff contends that the Defendants listed in Claim 6

19  
> had the duty and responsibility to constitutionally hire, train, instruct,
> monitor, supervise, evaluate, investigate, staff and discipline all employees
20  > and agents of the SCSO. They failed to do so, with deliberate indifference
> to my, and others', constitutional rights that were violated, as described.
21  

22  Id. at 29.

23              Plaintiff includes portions of Shasta County Sheriff's Department Custody Manual

24  Policy #700, ADULT CORRECTIONS OFFICER CORE COURSE, and additional policies and

25  Title 15 regulations, asserting that such policies "were, with deliberate indifference and reckless

26  disregard, blatantly ignored." Id. at 29-31. Additionally, Plaintiff repeats throughout the amended

27  complaint, at times with slight variation, that the actions of non-County Defendants "were

28  pursuant to the customs policies, practices and/or procedures of defendants County, SCSO,

4

Bosenko and Kent." Id. at 13; 19; 23; 28.

For Claim 7, Plaintiff contends that Defendants Shasta County, SCSO, Bosenko, Magrini, Randall, Kent, Van Gerwen, Decker, Jurkiewicz, Millis, Bridgett, Woods, and Fitzgerald violated the Bane Act, California Civil Code § 52.1. Id. at 32. According to Plaintiff, this claim was severed from Anderson 1. See id. Plaintiff states:

> Defendant County is liable for the wrongful acts of defendants Bosenko, Magrini, Randall, Kent, Van Gerwen, Decker, Jurkiewicz, Millis, Bridgett, Woods, and Fitzgerald, pursuant to section 815.2(a) of the California Government Code . . . [portion of code omitted] . . . Upon information and belief, corrections officer defendants intentionally and spitefully committed the acts detailed in the claims in this complaint to discourage me from exercising my civil rights, to retaliate against me for invoking my rights, to rally around and protect Van Gerwen from the excessive force complaint I lodged, and to prevent me from exercising my civil rights. Furthermore, upon information and belief, defendants Bridgett's, Woods' and Fitzgerald's commitment to the 'Chronic Offender Accountability Program" cause them, with reckless disregard for the truth and deliberate indifference, to not use due diligence and investigate the allegations in defendant Decker's falsified report. With reckless disregard for my safety, my civil rights and the oath they took, defendant Decker wrote a false report to ensure malicious prosecution in retaliation for my lawsuit against his comrades. Upon information and belief, defnednat Millis intentionally putting me in such a degrading and dangerous situation as that "poop cell" was to break my spirit – and shut down my lawsuit against his fellow jailers.

Id. at 33.

Plaintiff goes on to assert that the Defendants named in this claim

> by their actions/inactions:
> - Deny inmates the right to fully grieve their complaints, without impeding the process.
> - Deny inmates the right to adequate medical care/treatment and respect for prescriptive measures.
> - Fail to better instruct corrections officers on how excessive force is not appropriate to use on a compliant inmate. Or worse, ignore officers wanton disregard of the rules in place.
> - Fail to discipline corrections officers when they violate the civil rights of inmates.
> - Fail to reinforce the Jail Training, Core Training and Title 15 instruction that all correction officers are mandated to have received.
> - Fail to follow the Americans with Disability Act, despite having already lost a lawsuit on that very topic.
> - Tolerate the use of routine, and often unreported, excessive and unnecessary force against inmates.
> - Tolerate sadistic acts of cruel and unusual punishment by corrections officer.

> - Cover up violations of constitutional rights by failing to properly investigate complaints, ignoring the repetitive bad actions of corrections officers.
> - Allow corrections officers to file false reports.
> - Fail to report incidents and/or cover up incidents.
> - Tolerate the code of silence amongst staff, hindering the illumination of unconstitutional actions.
> - Fail to follow federal, state and SCSO policies for a worldwide pandemic.

Id. at 33-34.

In Claim 8, Plaintiff contends that Defendant Shasta County is subject to municipal liability under Monell. Id. at 35. Plaintiff states that the named Defendants "were directed, encouraged and/or allowed by the policymaking officers for defendant County and its SCSO" to commit the same violations quoted above. Id. at 35. Plaintiff then reiterates allegations included in other claims. Additionally, Plaintiff asserts:

> I, the plaintiff, have been directly impacted by the deliberate indifference of defendants Bridgett, Woods and Fitzgerald because they:
> - Cover up violations of constitutional rights by failing to properly investigate complaints, ignoring the repetitive bad actions of corrections officers.
> - Allow corrections officers to file false reports.
> - Charge and attempt to prosecute people on false charges, despite having exculpatory evidence in hand.
> - Continue to defame a person even after the false charges were dropped. It was the duty of defendant Bridgett's Shasta County District Attorney's Office to correct erroneous information that would defame a person. To not do so, with such deliberate indifference and a reckless disregard for the truth, is an intentional defamation of character. Once her office became aware of Decker's fabricated report, the record should have been corrected/updated; but with deliberate indifference and a reckless disregard for the truth, it was instead sent to the Board of Parole Hearings (Prop 57) by defendant Bridgett's office even after the final charge was shown to not line up with the Decker's fabricated incident report. . . . these actions/omissions were approved, tolerated, and/or ratified by County and Bridgett, a policymaking officer, who has allowed such legal failures to become part of the culture, customs, policies, patters and practices of her elected office.

Id. at 36.

Plaintiff next states Claim 9, alleging a violation of the Eighth Amendment by Defendants Magrini, Dellwo, and Wellpath. Id. at 38-39. As to Defendant Magrini, Plaintiff quotes multiple news articles about how Defendant Magrini addressed COVID. Id. at 38. According to Plaintiff, Defendant Dellwo "ignored my blatantly obvious COVID-19 case . . . [in]

6

a deliberate attempt to cover up the extent of the COVID spread within the jail." Id. at 40. Plaintiff asserts that he was "made to suffer through [COVID] with only ibuprofen." Id. at 37. Plaintiff concludes this claim by listing cases where Defendants Dellwo and Wellpath are named Defendants, quoting a Sheriff's Administrative Association's press release, and including Shasta County Sheriff's Office Custody manual policy #700. Id. at 40-41.

Plaintiff next asserts Claim 10, an alleged violation of Plaintiff's Fourteenth Amendment rights for "using fabricated evidence to charge [Plaintiff], then continue to defame [Plaintiff] with the lies." These claims are asserted against Defendants Bridgett, Woods, and Fitzgerald. Id. at 42. According to Plaintiff:

> Defendant Shasta County District Attorney Bridgett and the defendant deputy DAs representing her office in these proceedings had the duty to proceed with due diligence, before accusing a person with crimes. When videos are available, they should be reviewed prior to making accusations let alone charging someone. The attorneys acted with a reckless disregard for the truth. . . Upon information and belief, Bridgett's actions (and orders to her subordinates) we an abuse of process, with the ulterior motive of willfully using the legal process to put me away, whether I was guilty or not. Bridgett, an elected official was on a mission to show the community that she was tough on crime . . . When the deputy DA saw the video, it was his duty to notify his boss, the DA of the lies in Decker's fabricated report. He had seen the truth with his own eyes! Bridget failed to train her subordinates in lawful procedures, plus vouched for the credibility of a lying witness (Decker). Jailers, supervisors, sheriff, deputy Das, district attorney, judge – the procedures in place to ensure a fair outcome for a person, presumed innocent, were insufficient.

Id. at 43.

Plaintiff specifies Defendants Woods' and Fitzgerald's involvement in the alleged violation as Defendant Woods was on the record on behalf of the district attorney's office when presenting the case, and Defendant Fitzgerald signed the criminal complaint against Plaintiff. Id. at 45.

Plaintiff's final claim, Claim 11, alleges a Fourth Amendment violation by Defendants Bridgett, Woods, and Fitzgerald with the same facts as Claim 2. See id. at 14-17, 47-51. Any portions of Claim 11 not present in Claim 2 are repeated in other claims. See id.

///

///

7

## II. DISCUSSION

Plaintiff alleges eleven claims against fifteen Defendants. The Court finds two of these claims to plausibly state a cognizable claim for relief. Specifically, in Claim 3 Plaintiff alleges an Eighth Amendment violation based on inhumane conditions of confinement on March 7, 2019. Id. at 18. The Court finds these allegations sufficient to plausibly state a cognizable Eighth Amendment violation by Defendant Millis. In Claim 4, Plaintiff asserts that Defendants Jurkiewicz and Decker filed a false report in retaliation for Plaintiff exercising his first amendment rights. Id. at 23. The Court finds these allegations sufficient to plausibly state a cognizable retaliation claim against Defendants Jurkiewicz and Decker.

The other claims, discussed further below, are insufficient as currently pleaded. Plaintiff's due process claim fails to assert a viable property interest. Given that the conduct of Defendants Bridgett, Woods, and Fitzgerald are covered by prosecutorial immunity, the claims against those defendants are also not cognizable. As to Plaintiff's Eighth Amendment medical needs claim, because Plaintiff does not allege that Defendant Dellwo acted with the purpose of inflicting harm, or that Plaintiff's lack of treatment led to further injury, that claim is also not cognizable. Plaintiff's municipal liability claim is not cognizable because Plaintiff does not allege that any constitutional violation was the result of a policy or custom. Plaintiff's claim of supervisory liability is not cognizable because the complaint does not show a causal link between any of Plaintiff's alleged constitutional deprivations and the supervisory personnel named. While Plaintiff asserts a violation of the Bane Act, Plaintiff fails to plead compliance with the Government Claims Act. Thus, this state law claim cannot proceed. Plaintiff's final claim, Claim 11, is the same cause of action and relies on the same facts as Claim 2. Therefore, that claim is duplicative and not cognizable.

Each of these defects is discussed in more detail below. Plaintiff will be provided an opportunity to amend.

/ / /

/ / /

/ / /

A.  **Due Process**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.

Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

/ / /

/ / /

As currently pleaded, the Court finds Claim 1 to be defective. To the extent that Plaintiff's claim is based on internal disciplinary proceedings, the Court reiterates that due process requires that Plaintiff be given sufficient procedural safeguards before being disciplined. ECF No. 9, pg. 8; see Wolff, 418 U.S. at 563-70. Plaintiff does not allege that he was denied the opportunity to present evidence or call witnesses, and so he does not present a cognizable due process claim arising from the disciplinary process. See id. To the extent Plaintiff's due process claim arises from the District Attorney's office charging Plaintiff based on the allegedly fabricated report, Plaintiff describes the injury as a reduction of his good time credits and "drastically altering [Plaintiff's] release date." ECF No. 12, pg. 10. Given that early release and good time credits are not a liberty interest protected by the Fourteenth Amendment, Plaintiff fails to state a cognizable Due Process violation in Claim 1. Plaintiff will be provided an opportunity to amend.

### B. Prosecutorial Immunity

Prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocate for the state. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). This immunity extends to actions during both the pre-trial and post-trial phases of a case. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984). State prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity. See Kalina v. Fletcher, 522 U.S. 118, 123-25 (1997).

Plaintiff brings two claims against Defendants protected by prosecutorial immunity. Claim 2 alleges a Fourth Amendment violation by Defendants Bridgett, Woods, and Fitzgerald for relying on a report, which according to Plaintiff was fabricated, when filing an arrest warrant. See ECF No. 12, pg. 14. Claim 10 alleges violations of the Fourteenth Amendment due process clause, asserting that the District Attorney, Defendant Bridgett, used fabricated evidence to charge Plaintiff. Id. at 42. Given prosecutorial immunity applies pre-trial, Defendants Bridgett, Woods, and Fitzgerald are protected by prosecutorial immunity for both Claim 2 and Claim 10. Thus, the claims against Defendants Bridgett, Woods, and Fitzgerald are not cognizable. This defect cannot be cured through amendment.

### C. Eighth Amendment Medical Needs

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v.

McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges an Eighth Amendment violation because he was only given Ibuprofen when he had COVID-19. Id. at 37. As with his original complaint, because Plaintiff does not allege Defendant Dellwo acted with the purpose of inflicting harm nor that his lack of treatment led to further injury, Plaintiff does not present a cognizable medical needs claim. To the contrary, Plaintiff affirmatively alleges that Defendant Dellwo provide medical treatment (Ibuprofen). Thus, the Court cannot conclude on the current allegations that Defendant Dellwo was deliberately indifferent. To the extent Plaintiff claims that Ibuprofen was an insufficient treatment, Plaintiff cannot state a claim based on a difference of opinion. Nonetheless, Plaintiff will be provided an opportunity to amend.

### D. Municipal Liability

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See id. To assert municipal liability, therefore, the plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id.

Plaintiff brings Claim 5 and Claim 8 against Defendant Shasta County. Both claims are identical to Plaintiff's municipal liability claims in Anderson 1. There, the Court dismissed Defendant Shasta County without leave to amend. See ECF No. 28, pgs. 16-19, in Anderson 1. In Claim 8, Plaintiff included additional allegations against Defendant Bridgett that were not included in Anderson 1. Claim 5 and Claim 8 are substantively different here than in Anderson 1 because they allege municipal liability arising out of different claims. However, Plaintiff relies on the same facts, citing cases and articles, to support the claim as he did in

Anderson 1. See ECF No. 12, pg. 5-6; see ECF No. 28, pgs. 17-19, in Anderson 1. In Anderson 1, the Court addressed the issue of municipal liability, finding the cases, yet to be determined on their merits, and articles, which discuss different behavior than Plaintiff alleges, insufficient to plead "a custom or policy for which the municipal defendants can be held liable." ECF No. 28, pg. 19, in Anderson 1. Further, Plaintiff fails to assert facts to show that any custom or policy was the driving force for Plaintiff's alleged constitutional violations. In fact, Plaintiff repeatedly states that individual defendants defied County policies when violating Plaintiff's constitutional rights, rather than the deprivation of rights arising out of a custom or policy itself. See id. at 29-31. Therefore, the Court finds the claims against Defendant County are not cognizable. Plaintiff will be provided leave to amend.

### E. Supervisor Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. See Taylor, 880 F.2d at 1045; see also Starr v. Baca, 633 F.3d 1191, 1209 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." See Ashcroft v. Iqbal, 556 U.S.

14

662, 676 (2009).

Plaintiff brings Claim 6 against Defendants Bosenko, Magrini, Kent, Randall, Bridgett, Woods, Fitzgerald, Van Gerwen, Decker, Juriewicz, Millis and Owen under the theory of supervisor liability. However, Plaintiff fails to show the causal link between any of Plaintiff's alleged constitutional deprivations and these supervisory personnel. Thus, Claim 6 is not cognizable. Plaintiff will be provided an opportunity to amend.

### F.   Bane Act

Plaintiff has failed to state claims based on state law because Plaintiff has not alleged compliance with the Government Claims Act, which is required to plead such claims. See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for claims against the State, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); see also Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").

Plaintiff asserts a violation of California law, but plaintiff fails to plead compliance with the Government Claims Act. Plaintiff was informed in the Court's prior order at ECF No. 9 that before he may proceed on a claim arising under California law in this Court, he must comply with the terms of the Government Claims Act, and then plead compliance. See Cal. Gov't Code § 910 et seq.; Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995). Therefore, Claim 7 is not cognizable.

### G.   Duplicative Claim

Plaintiffs do not have a right to maintain two separate actions regarding the same subject matter at the same time in the same court against the same defendant. Mendoza v. Amalgamated Transit Union Int'l, 30 F.4th 879, 886 (9th Cir.). The objectives for barring claim-splitting are to protect a defendant from repetitive actions based on the same claim and to promote judicial economy. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 328, 330 (9th Cir.). The test for claim-splitting is borrowed from the test for claim preclusion. Mendoza, 30 F.4th at 886. To determine whether the claim is duplicative, the Court considers:

(1) whether the causes of action and relief sought are the same; and (2) whether the parties are the same. Id.

Plaintiff's Claim 11 is the same cause of action, Plaintiff seeks the same relief, and the parties are the same as with Claim 2. See id. Thus, Claim 11 is duplicative and therefore not cognizable.

### III. CONCLUSION

Because it is possible that many of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend.[2]  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

///

---

[2] As explained above, Plaintiff is not entitled to leave to amend as to his claims against Defendants Bridgett, Woods, and Fitzgerald, who enjoy prosecutorial immunity.  Should Plaintiff continued to raise claims against these defendants in an amended pleading, the Court will recommend they be dismissed with prejudice along with any other reasserted claims as to which Plaintiff has not cured the defects identified herein.

16

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a second amended complaint within 30 days of the date of service of this order.

Dated: January 23, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE