IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN DAVID ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SHASTA, et al.,<br><br>Defendants. | No. 2:23-CV-0757-DAD-DMC-P<br><br><br><br>ORDER |

Plaintiff, who is proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's second amended complaint, ECF No. 14.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

///

///

1

1    Moreover, the Federal Rules of Civil Procedure require that complaints contain a
2  ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.
3  Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See
4  McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).
5  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim
6  and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).
7  Because Plaintiff must allege with at least some degree of particularity overt acts by specific
8  defendants which support the claims, vague and conclusory allegations fail to satisfy this
9  standard. Additionally, it is impossible for the Court to conduct the screening required by law
10 when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

13    This action proceeds on Plaintiff's second amended complaint. See ECF No. 14.
14 Plaintiff names the following as Defendants: (1) County of Shasta; (2) Shasta County Sheriff's
15 Office (SCSO); (3) Tom Bosenko; (4) Eric Magrini; (5) David M. Kent; (6) Gene B. Randall; (7)
16 Robert M. Van Gerwen; (8) Zachary S. Jurkiewicz; (9) William J. Decker; (10) Joshua R. Millis;
17 (11) Debra K. Owen; and (12) Wellpath. See id. at 1-2. Plaintiff has another pending action,
18 Anderson v. Vangerwen et. al., E. Dist. Cal. case no. 2:20-cv-00246-DC-SCR (herein Anderson
19 1), which is referenced in the amended complaint in this action.
20    In Plaintiff's Claim 1, Plaintiff contends that his Fourth and Fourteenth
21 Amendment rights were violated when Defendant Decker and Jurkiewicz "participated in creating
22 or perpetuating false narratives" regarding an incident on February 22, 2019. Id. at 11. Plaintiff
23 states that Defendants Shasta County, Shasta County Sheriff's Office, Bosenko, Magrini, Kent,
24 and Randall "allowed the fabrication to proceed." Id. Plaintiff contends that the fabrication of
25 evidence, false statements, and false information created and relayed by the Defendants caused
26 Plaintiff to be charged with "more severe offenses" than he would have otherwise been charged
27 with, placed in solitary confinement and subjected to "harsher than the ordinary incidents of his
28 original sentence." Id. at 11. According to Plaintiff, Defendant Decker's "incident report

2

1    contained fabricated statements" that were the basis of Plaintiff's arrest warrant. Id. at 12-13.

2            Plaintiff alleges that video footage of the February 22, 2019, incident proves
3    Defendants provided fabricated statements. See id. at 13. According to Plaintiff, Defendant
4    Jurkiewicz did not watch the video of the February 22, 2019, incident. See id. at 11. Plaintiff
5    contends that the video footage clearly shows that Plaintiff did not use his arm cast or a medically
6    issued metal boot during the February 22, 2019, incident. See id. Despite this footage, Plaintiff
7    alleges that on March 11, 2019, Defendant Jurkiewicz "tried to get the doctor to enter 'fighting
8    which his casts on' into my medical record." Id. at 13. In addition, Plaintiff states that Defendants
9    withheld this video evidence from Plaintiff's public defender. See id. at 12.

10           In Plaintiff's Claim 2, Plaintiff alleges a claim of cruel and unusual punishment
11   arising from when Plaintiff was "thrown into 'the hole,'" which at the time, was covered in urine
12   and feces. Id. at 16. Plaintiff claims when he asked Defendant Millis for cleaning supplies or
13   another cell, Defendant Millis said "'Gross. That sucks.'" Id. at 16. Plaintiff contends that this
14   indifference to the cell conditions was a clear violation of Title 15 of the Shasta County Sheriff's
15   Office policy and a violation of the biohazard training that Defendant Millis received over the
16   years. See id. at 17. Plaintiff claims that to clean the cell, Plaintiff "had to use my own towel and
17   bar soap. For more than three hours, I did my best to clean . . ." See id. at 16. Plaintiff asserts that
18   the conditions caused Plaintiff to fall ill and suffer from supered cellulitis, lymphangitis, and
19   gastrointestinal issues. See id. According to Plaintiff, Defendant Millis' "intentional inaction . . .
20   [was] due to his allegiance with defendant Van Gerwen – and in retaliation for my grievances."
21   Id. at 17. Further, Plaintiff claims that Defendant Owen deliberately withheld the hygiene items
22   and food his mother sent, "in retaliation for [Plaintiff's] grievances." Id. at 17.

23           In Claim 3, Plaintiff asserts his First Amendment rights were violated when
24   Defendant Van Gerwen used excessive force and verbally harassed Plaintiff, because Plaintiff
25   "pushed to have [Defendant Van Gerwen] investigated." Id. at 18. Plaintiff claims that
26   Defendants Jurkiewicz, Decker, Millis, and Owen conspired with Defendant Van Gerwen to
27   torment and violate Plaintiff's constitutional rights because of Plaintiff's previous grievances and
28   lawsuits. See id. According to Plaintiff, Defendant Decker fabricated his report on the February

22, 2019, incident in retaliation for Plaintiff's prior complaints about Defendant Van Gerwen. Id. at 19. Plaintiff contends that Defendant Jurkiewicz also provided a false statement about the February 22, 2019, incident in his report written March 4, 2019. Id. at 19-20.

Plaintiff next asserts Claim 4, asserting municipal liability because "the unconstitutional actions and/or omissions of defendants Van Gerwen, Jurkiewicz, Decker, Millis and Owen, as detailed in the claims in this complaint, were pursuant to the customs, policies, practices and/or procedures of defendants County, SCSO, Bosenko, Magrini, Randall and Kent." Id. at 22. Further, Plaintiff asserts that Defendants Shasta County, Shasta County Sheriff's Office, Bosenko, Magrini, Kent and Randall "know there is a history of unconstitutional actions and/or omissions by certain corrections officers, including Decker and Jurkiewicz, yet they allow the acts/omissions to continue, with reckless disregard for the truth." Id. at 14. Plaintiff contends that the "failure to train, supervise, and discipline" amounts to "a custom or practice" where officers:

> Are not properly investigated or disciplined for fabricating reports or making perjurious statements; Are allowed to escalate racial tensions among inmates; Receive little or no oversight for critical incident reporting; Face no consequences for retaliating against inmates who report misconduct.
> Despite written formal policies . . . the County and Sheriff's Office fail to enforce those rules in practice.

Id. at 15 (line numbers omitted).

Plaintiff asserts that when Defendants Van Gerwen, Decker, Jurkiewicz, Millis, and Owen violated Plaintiff's rights, they "were acting on the implied and actual permission and Consent of County, SCSO, Magrini, Bosenko, Randall, and Kent." Id. at 22-24.

Plaintiff contends that though "the SCSO custody Manual, Title 15 regulations, and the Adult Corrections Officer CORE training prohibit excessive force, require truthful incident reporting, mandate safe and sanitary confinement conditions, and protect inmate grievances, . . . in practice, SCSO officers routinely ignore these rules…" Id. at 26. Plaintiff claims that the facts underlying Plaintiff's allegations are evidence that the written protocols are disregarded and Defendants Shasta County, Shasta County Sheriff's Office, Bosenko, Magrini, Randall, and Kent were deliberately indifferent to these violations. See id. at 26-27.

///

1               In Claim 5, Plaintiff asserts a supervisory liability claim, alleging Defendants
2   allowed violations against Plaintiff to occur with "deliberate indifference and a reckless disregard
3   for the truth." Id. at 28. Plaintiff asserts that Defendants Shasta County, Shasta County Sheriff's
4   Office, Bosenko, Magrini, Kent and Randall, had a duty to "train, instruct, monitor, supervise,
5   evaluate, investigate, staff and discipline the other defendants…" Id. According to Plaintiff,
6   because those Defendants did not meet that duty, Plaintiff suffered abuse and his constitutional
7   rights were violated. See id. Plaintiff claims that "these supervisory Defendants had actual or
8   constructive notice of recurring unlawful practices…" because of the grievances and lawsuits
9   filed by Plaintiff and other inmates. Id. at 31. Plaintiff claims that Defendants knew or should
10  have known about the violations that were occurring and as a result, they are liable for the
11  continued violations. See id. at 31-33.

12              Plaintiff next asserts Claim 6 against Defendants Shasta County, Shasta County
13  Sheriff's Office, Bosenko, Magrini, Randall, Kent, Van Gerwen, Decker, Jurkiewicz, and Millis
14  for violating the Bane Act. See id. at 34. Plaintiff alleges that the Defendants' fabricated evidence
15  and the "coercive environment designed to stop me from lodging complaints, clearly interfered
16  with my right to be free from excessive force and wrongful prosecution." Id. at 35. Plaintiff
17  claims that the Defendants' collective acts of fabricating evidence, using excessive force, and
18  subjecting Plaintiff to dangerous living conditions, amount to threat, intimidation, or coercion
19  under the Bane Act. See id. Plaintiff believes that the Defendants "intentionally and spitefully
20  committed the acts detailed in the claims in this complaint to discourage/prevent me from
21  exercising my civil rights, to retaliate against me for invoking my rights, to rally around and
22  protect Van Gerwen from the excessive force complaint I lodged." Id. at 36.

23              In Claim 7, Plaintiff asserts a municipal liability claim against Defendants Shasta
24  County and the Shasta County Sheriff's Office because the Defendants adopted a de facto custom
25  of allowing and tolerating misconduct which resulted in harm to Plaintiff. See id. at 38-41.
26  Plaintiff claims that the acts by Defendants Bosenko, Magrini, Randall, Kent, Van Gerwen,
27  Decker, Jurkiewicz, Millis and Owen were on behalf of Defendant Shasta County and "pursuant
28  to the following customs, policies, practices and/or procedures of Defendant County." Id. Plaintiff

5

alleges that Defendants Shasta County and Shasta County Sheriff's Office adopted a de facto custom of non-enforcement and impunity for unconstitutional acts. See id. at 40. Plaintiff states that Defendants Shasta County, Shasta County Sheriff's Office, Bosenko, Magrini, Kent, and Randall all had warning of the misconduct happening and were "responsible for the jail's supervision, staffing and discipline." Id. at 40-41. Plaintiff contends these Defendants are subject to municipal liability under Monell because the violations and lack of consequences for the violations show there was a custom of tolerating excessive force, falsified reports, and retaliation against inmates despite written policies prohibiting such misconduct. See id. at 41.

In Claim 8, Plaintiff alleges an Eighth Amendment violation claiming Defendants were deliberately indifferent to Plaintiff's serious medical needs. See id. at 42. Plaintiff states that in January 2021, Covid-19 cases "spiked in Shasta County" among inmates, including Plaintiff, and jail employees because of Defendants' failure to follow Covid-19 protocols. Id. Plaintiff states that Defendants were not following the SCSO's Custody Manual Communicable Diseases Policy 903, which required that anyone entering the isolation room to provide care to an inmate to wear a respirator. See id. at 45. As a result of the "deliberate indifference," Plaintiff lost his sense of taste and smell for six months, suffered from anxiety and distress, lost his "good time" credit, and still experiences the lingering effects of Covid-19. Id. at 42.

Plaintiff asserts that on January 14, 2021, he requested to see the doctor and to be given a Covid-19 test because Plaintiff felt symptoms similar to Covid-19 symptoms, but was denied a Covid-19 test by the physician's assistant, Defendant Dellwo. See id. at 45. Plaintiff states that he was administered a Covid-19 test four days later because it was mandatory for an upcoming prison transport, and the test confirmed that Plaintiff had Covid-19. See id. As a result of the late diagnosis, due to Plaintiff being denied the Covid-19 test, Plaintiff claims he lost his "good time" credit. Id. Plaintiff asserts that he believes he gave Covid-19 to his cellmate, and other inmates because Plaintiff "was made to serve meals throughout the facility." Id. Plaintiff alleges that this was not a "difference of medical opinion" but was a deliberate attempt to cover up the spread of Covid-19 at the jail by the Defendants. See id. Plaintiff contends that he was denied Covid-19 testing because the physician's assistant was following orders given by

6

Defendant Wellpath and/or Defendants Shasta County, Shasta County Sheriff's Office, Magrini, and Randall. See id.

## II. DISCUSSION

In the second amended complaint, Plaintiff alleges a cognizable Fourth Amendment claim in Claim 1, contending that Defendant Decker provided false information in his January 9, 2020, "declaration for arrest" that resulted in the arrest of Plaintiff. The Court finds Claim 2 to be a cognizable Eight Amendment claim against Defendant Millis based on his inhumane conditions of confinement on March 7, 2019. Plaintiff asserts a cognizable First Amendment retaliation claim against Defendants Jurkiewicz and Decker for providing false statements about the February 22, 2019, incident in retaliation for Plaintiff filing grievances against Defendant Van Gerwen as Claim 3. Plaintiff asserts a cognizable municipal liability against Defendant Shasta County, Shasta County Sheriff's Office, and Wellpath alleging a "custom or practice" of allowing officers to commit constitutional violations without recourse for inmates as Claim 4. The Court finds Claim 5 to present a cognizable supervisory liability claim against Defendants Bosenko, Magrini, Kent, and Randall, for their knowledge of constitutional violations and failure to prevent such ongoing violations. In Claim 8, Plaintiff asserts a cognizable Eighth Amendment claim arising from Defendant Dellwo's refusal to give Plaintiff a Covid-19 test, despite Plaintiff presenting symptoms of Covid-19. Plaintiff contends that this denial was deliberate and resulted in Plaintiff experiencing "pain and fatigue[], with a loss of taste and smell." ECF No. 14, pg. 45. Plaintiff additionally asserts a retaliation claim, which the Court will label Claim 9, against Defendant Owen for withholding hygiene products from Plaintiff in retaliation for Plaintiff's grievances.

This Court previously screened Plaintiff's first amended complaint. See ECF No. 13. There, the Court advised Plaintiff that his due process claim was deficient because Plaintiff did not allege he was denied the procedural safeguards required for internal disciplinary proceedings and, to the extent that Plaintiff's claim arose from a loss of good time credits, that is not a liberty interest protected by the Fourteenth Amendment. See id. at 11; see Wolff, 418 U.S.

7

1 at 563-70 and 577. Plaintiff was also advised that his Bane Act claim was deficient because he
2 failed to show compliance with the Government Claims Act. See ECF No. 13, pg. 15. Plaintiff's
3 second amended complaint is almost identical to the first amended complaint and, to the extent
4 that Plaintiff added new information to the second amended complaint, Plaintiff did not cure the
5 defects with the due process and Bane Act claims, as explained further below. See ECF Nos. 12
6 and 14. As to Claim 3, Plaintiff does not provide facts underlying his allegation of excessive force
7 and verbal harassment. Nor does Plaintiff provide any facts linking Defendant Van Gerwen to the
8 constitutional violations alleged in the complaint. Finally, Claim 7 is duplicative as it is the same
9 cause of action and relies on the same facts as Claim 4. For these reasons, described in greater
10 detail below, the undersigned will provide Plaintiff with leave to amend before recommending
11 such deficient claims be dismissed.

        A.     **Due Process**

13         The Due Process Clause protects prisoners from being deprived of life, liberty, or
14 property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to
15 state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or
16 property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672
17 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Liberty interests can arise both from
18 the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum
19 v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In
20 determining whether the Constitution itself protects a liberty interest, the court should consider
21 whether the practice in question ". . . is within the normal limits or range of custody which the
22 conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at
23 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself
24 provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the
25 general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges,
26 see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see
27 Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v.
28 Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in the procedures used in prison disciplinary hearings where a successful claim would not necessarily shorten the prisoner's sentence. See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate release from prison were cognizable under § 1983).

Where a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39.

Finally, with respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see

9

Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

The Court finds Plaintiff's Claim 1 Fourteenth Amendment due process claim to be defective. To the extent that Plaintiff's claim is based on internal disciplinary proceedings, the Court reiterates that due process requires that Plaintiff be given sufficient procedural safeguards before being disciplined. See ECF No. 9, pg. 8; Wolff, 418 U.S. at 563-70. Plaintiff does not allege that he was denied the opportunity to present evidence or call witnesses, and so he does not present a cognizable due process claim arising from the disciplinary process. See id. Given that early release and good time credits are not a liberty interest protected by the Fourteenth Amendment, Plaintiff fails to state a cognizable Due Process violation in Claim 1. Plaintiff was previously informed of this deficiency and was provided the opportunity to amend his complaint to remedy such deficiency but failed to do so. Plaintiff will again be provided leave to amend.

**B.    Causal Link**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional

1  deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

2         In Claim 3, Plaintiff asserts that Defendant Van Gerwen used excessive force and verbal harassment in retaliation for grievances Plaintiff filed. However, Plaintiff does not provide facts to show such excessive force and verbal harassment. Nor does Plaintiff allege any facts linking Defendant Van Gerwen to the constitutional violations alleged within this complaint. While Plaintiff contends that other Defendants acted in retaliation for Plaintiff's grievances against Van Gerwen, Plaintiff does not provide facts to show Van Gerwen himself retaliated against Plaintiff. The Court notes that Plaintiff alleges excessive force by Defendant Van Gerwen in the February 22, 2019, "elevator ride," however, Plaintiff is pursuing excessive force claims arising from that incident in Anderson 1. See ECF No. 28 (2:20-cv-00246-DC-SCR). Plaintiff does not provide additional facts underlying this allegation of excessive force and verbal harassment nor actions taken by Defendant Van Gerwen and therefore, Plaintiff will be provided leave to amend as to Claim 3.

      **C.**     **Bane Act**

       Plaintiff was informed that to bring a Bane Act claim, he needed to comply with the California Government Claims Act. See ECF No. 13, pg. 15; see also Cal. Gov't. Code § 900, et seq. The California Government Claims Act establishes conditions required to file a lawsuit against a public entity for money or damages. Id. Under the Act, a plaintiff must either receive a notice of the claim's rejection or give the entity 45 days to respond to the claim prior to the filing of any lawsuit, after which the entity's inaction is deemed a rejection. See Cal. Gov't. Code §§ 912.4, 945.4. Failure to timely present a claim to the public entity bars the plaintiff from filing a lawsuit against that public entity. See Stampfil v. Susanville Sanitary Dist., 2021 U.S. Dist. LEXIS 113142, *23-24 (E.D. Cal. 2021).

       In the amended complaint, Plaintiff references the Government Claims Act and the requirements under such act, requesting: "I ask the Court to excuse any perceived lack of PLRA exhaustion, allow my state law claims –inducing the Bane Act claim—to proceed, and grant relief for the harm inflicted by Defendants' unconstitutional actions." ECF No. 14, pg. 36.  The Court does not find this statement is sufficient to waive the requirement of compliance with the

Government Claims Act. Despite being informed of the deficiency with his Bane Act claim, Plaintiff failed to remedy this deficiency in his amended complaint. Plaintiff will have an additional opportunity to show compliance with the Government Claims Act or demonstrate that such compliance is not required here.

### D.     **Duplicative Claim**

Plaintiffs do not have a right to maintain two separate actions regarding the same subject matter at the same time in the same court against the same defendant. Mendoza v. Amalgamated Transit Union Int'l, 30 F.4th 879, 886 (9th Cir.). The objectives for barring claim-splitting are to protect a defendant from repetitive actions based on the same claim and to promote judicial economy. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 328, 330 (9th Cir.). The test for claim-splitting is borrowed from the test for claim preclusion. Mendoza, 30 F.4th at 886. To determine whether the claim is duplicative, the Court considers: (1) whether the causes of action and relief sought are the same; and (2) whether the parties are the same. Id.

Plaintiff's Claim 7 is the same cause of action, Plaintiff seeks the same relief, and the parties are the same as with Claim 4. See id. Thus, as currently pleaded, Claim 7 is duplicative and not cognizable. It is possible that Plaintiff could provide distinct facts to support Claims 4 and 7 and therefore, Plaintiff will be provided leave to amend.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

Government Claims Act. Despite being informed of the deficiency with his Bane Act claim, Plaintiff failed to remedy this deficiency in his amended complaint. Plaintiff will have an additional opportunity to show compliance with the Government Claims Act or demonstrate that such compliance is not required here.

### D.     **Duplicative Claim**

Plaintiffs do not have a right to maintain two separate actions regarding the same subject matter at the same time in the same court against the same defendant. Mendoza v. Amalgamated Transit Union Int'l, 30 F.4th 879, 886 (9th Cir.). The objectives for barring claim-splitting are to protect a defendant from repetitive actions based on the same claim and to promote judicial economy. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 328, 330 (9th Cir.). The test for claim-splitting is borrowed from the test for claim preclusion. Mendoza, 30 F.4th at 886. To determine whether the claim is duplicative, the Court considers: (1) whether the causes of action and relief sought are the same; and (2) whether the parties are the same. Id.

Plaintiff's Claim 7 is the same cause of action, Plaintiff seeks the same relief, and the parties are the same as with Claim 4. See id. Thus, as currently pleaded, Claim 7 is duplicative and not cognizable. It is possible that Plaintiff could provide distinct facts to support Claims 4 and 7 and therefore, Plaintiff will be provided leave to amend.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the

1  conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See
2  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
3  each named defendant is involved and must set forth some affirmative link or connection between
4  each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167
5  (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

   Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

   Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a third amended complaint within 30 days of the date of service of this order.

Dated:  November 6, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE